AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br>DEREK CALDERON<br><br>_Defendant(s)_ | )<br>)<br>)   Case No.  16-6229-SNOW<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __March 23, 2016 to April 19, 2016__ in the county of __Broward__ in the __Southern__ District of __Florida, and elsewhere__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B), 846 and Title 18, United States Code, Section 2. | Conspiracy to Possession with the Intent to Distribute 50 grams or more of Methamphetamine and Distribution of 50 grams or more of Methamphetamine. |

This criminal complaint is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

_Complainant's signature_

Crystal Connors, Special Agent, DEA
_Printed name and title_

Sworn to before me and signed in my presence.

Date: 5/16/16

_Judge's signature_

City and state:  Fort Lauderdale, Florida        Lurana S. Snow, United States Magistrate Judge
_Printed name and title_

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Crystal Connors, being duly sworn, hereby state as follows:

1. I am a Special Agent of the Drug Enforcement Administration ("DEA") assigned to the Miami Field Division in Miami, Florida. As such, I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516(1). I have been a Special Agent with DEA since November 2012. I have been assigned to the Miami Field Division since January 2013. I have specialized in investigations involving narcotics trafficking and money laundering. I have received training about narcotics trafficking and money laundering from the DEA and have been personally involved in investigations concerning the possession and distribution of controlled substances, as well as methods used to finance drug transactions and launder drug proceeds.

2. I submit this affidavit based on information known to me personally from the investigation, as well as information obtained from others who were directly involved in the matter or have personal knowledge of the facts herein. This affidavit seeking the issuance of an arrest warrant does not include all the information known to me, but only information sufficient to establish probable cause that Derek CALDERON, between on or about March 23, 2016 and continuing through on or about April 19, 2016, in the Southern District of Florida and elsewhere, did knowingly and willfully conspire with others to possess with the intent to distribute fifty (50) grams or more of a mixture or a substance containing a detectable amount of methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1),

841(b)(1)(B) and 846, and, between on or about March 31, 2016 and continuing through on or about April 19, 2016, in the Southern District of Florida and elsewhere, did knowingly and intentionally distribute fifty (50) grams or more of a mixture or a substance containing a detectable amount of methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B) and Title 18, United States Code, Section 2.

3.  On or about March 23, 2016, a DEA confidential source ("CS") located in Broward County, Florida, telephonically contacted[1] Derek CALDERON[2] ("CALDERON") to advise the CS knew a person (a DEA Task Force Officer acting in an undercover capacity) that wanted to buy "work" (drugs). CALDERON asked the CS if the DEA Task Force Officer undercover ("UC") wanted "green (marijuana), white (cocaine) or crystal (methamphetamine)?" The CS told CALDERON that the UC wanted to buy "crystal" or methamphetamine. CALDERON stated that "what we have available right now is Ice." CALDERON asked the CS the cost to buy one pound of methamphetamine in South Florida so CALDERON could "fight" to better the price to give the UC incentive to buy the methamphetamine in Texas. The CS provided CALDERON the number of the telephone used by the UC so CALDERON could talk to the UC. On the same date, CALDERON called the UC, who was located in Broward County, Florida, to advise that CALDERON had spoken to his supplier about the pending sale of methamphetamine to the UC.

---

[1] Copies of all of the communications referenced herein have been retained either by recording the telephone conversation, memorializing the text message, or making an audio and video recording of a meeting.

[2] The CS identified a photograph taken from an Instagram account of Derek CALDERON as the seller of the methamphetamine he contacted to introduce the UC.

CALDERON's supplier had lowered the price charged to the UC for the one (1) pound of methamphetamine the UC would purchase from CALDERON from $8,000.00 to $7,500.00.

4. On or about March 27, 2016, the UC, while located in Broward County, Florida, called the number of the telephone used by CALDERON[3]. During this conversation, the UC agreed to travel from South Florida to El Paso, Texas to meet CALDERON to pay $7,500.00 to buy one (1) pound of methamphetamine.

5. On or about March 30, 2016, the UC travelled from Broward County, Florida to El Paso, Texas to meet CALDERON to conduct the purchase of one (1) pound of methamphetamine for $7,500.00.

6. On or about March 31, 2016, the UC and CALDERON telephonically spoke and agreed to meet at the Flying J truck stop at 1301 Horizon Boulevard in El Paso, Texas. To be able to identify one another from the other individuals at the truck stop, the UC and CALDERON identified clothing they were wearing. The UC told CALDERON he was the man wearing a white hat. CALDERON told the UC he was dressed in his military uniform.

7. On or about March 31, 2016, at approximately 3:33 PM, CALDERON met the UC at the Denny's restaurant at the Flying J truck stop at 1301 Horizon Boulevard in El Paso, Texas wearing his Army Battle Dress Uniform (BDU) that had a tag affixed to the shirt with the last name of CALDERON. During this meeting, the UC and CALDERON discussed a future purchase by the UC from CALDERON of eight (8) pounds of methamphetamine that would cost the UC $6,500.00 per pound. CALDERON told the UC that the methamphetamine he was selling to the UC was "Blue Crystal," which CALDERON represented as the methamphetamine with the highest purity.

---

[3] According to Sprint, the subscriber of the telephone called by the UC is Derek CALDERON.

CALDERON suggested that future deliveries to the UC of methamphetamine could be mailed by CALDERON to the UC in South Florida. Any shipment of methamphetamine mailed by CALDERON to the UC that was lost in transit would not be the financial responsibility of the UC. CALDERON promised the shipment of methamphetamine would be re-sent until received by the UC. CALDERON and the UC subsequently exited the Denny's restaurant and entered a Ford F-150 truck CALDERON had driven to the Flying J truck stop to complete the sale of the methamphetamine from CALDERON to the UC. The UC gave CALDERON $7,500.00 and received from CALDERON an Army backpack that contained a substance CALDERON represented to be one (1) pound of methamphetamine. CALDERON said "disinfectant" had been put on to the methamphetamine to hide its odor. The substance received by the UC from CALDERON during this meeting later field tested positive for methamphetamine and weighed approximately one (1) pound. A cloth name tag used on Army uniforms that read CALDERON was in the back pack CALDERON used to deliver the methamphetamine to the UC.

8. On or about April 4, 2016, a video recording posted on the Instagram account of CALDERON was seen by your affiant that showed CALDERON holding bills with serial numbers the UC used to pay CALDERON for the one (1) pound of methamphetamine purchased on or about March 31, 2016. A post with this video recording stated: "This is what I'm about."

9. After the March 31, 2016 transaction with CALDERON, the UC communicated with CALDERON regarding a purchase of methamphetamine by the UC from CALDERON that would be sent by mail to the UC in Broward County, Florida. The UC originally wanted CALDERON to ship by mail eight (8) pounds of methamphetamine to the UC in Broward County, Florida. An impasse developed between the UC and CALDERON when CALDERON told the UC that the

supplier wanted the UC to travel to El Paso, Texas to complete the transaction. CALDERON advised the UC that the UC needed to be present to deliver the purchase money so the count could be verified before the methamphetamine would be given to the UC. The UC subsequently received a telephone call from an unknown male who identified himself as the partner of CALDERON. The unknown male told the UC that the methamphetamine the UC wanted to buy was available but could not be delivered to the UC in South Florida. The unknown male insisted that the exchange happen in Orlando, Florida, where the unknown male had associates because the money owed to buy the methamphetamine had to be verified before delivery. The unknown male explained that he needed to "protect their stuff (the methamphetamine)" since sixty thousand dollars ($60,000.00) had recently been lost. The eight (8) pound methamphetamine purchase where payment by the UC was expected prior to delivery that would not happen in South Florida was abandoned and replaced by the UC purchasing one (1) pound of methamphetamine completed through the electronic transfer of funds and shipment to the UC through the mail.

10.    On or about April 11, 2016, the UC spoke with CALDERON and the unknown male to arrange for one (1) pound of methamphetamine to be shipped by mail to the UC. The UC provided an address in Broward County, Florida, as the location for the package of methamphetamine to be mailed. The purchase price for the one (1) pound of methamphetamine the UC wanted to buy was set at $7,500.00. The unknown male told the UC a down payment of $1,500.00 would need to be deposited into a Bank of America account. The unknown male provided the UC the information required to complete an electronic transfer of funds into the designated account.

11. On or about April 12, 2016, one thousand and five hundred dollars ($1,500.00) was deposited into the bank account designated by the unknown male. The UC subsequently spoke with CALDERON and the unknown male in separate telephone conversations. CALDERON and the unknown male acknowledged the deposit and advised the package containing the one (1) pound of methamphetamine ordered by the UC would be mailed in the near future.

12. On or about April 16, 2016, a package post marked from Phoenix, Arizona, was delivered by the United States Postal Service to the address in Broward County, Florida, the UC previously provided. The package did contain approximately one (1) pound of a substance that field tested positive for methamphetamine. The UC spoke to CALDERON and the unknown male in separate telephone conversations to acknowledge receipt of the package of methamphetamine. The unknown male instructed the UC to deposit three thousand and five hundred dollars ($3,500.00) into the same Bank of America account the UC used to make the down payment. CALDERON instructed the UC to deposit the remaining balance owed of two thousand and five hundred dollars ($2,500.00) into a Wells Fargo bank account that CALDERON provided the transmittal information to the UC.

13. On or about April 18, 2016, two thousand and five hundred dollars ($2,500.00) was deposited into the Wells Fargo account designated by CALDERON.

14. On or about April 19, 2016, three thousand and five hundred dollars ($3,500.00) was deposited into the Bank of America account the UC used to make the down payment.

15. Based on the above information and facts, your affiant submits there is probable cause to believe that Derek CALDERON between on or about March 23, 2016 and continuing through on or about April 19, 2016, in the Southern District of Florida and elsewhere, did knowingly and

willfully conspire with others to possess with the intent to distribute fifty (50) grams or more of a mixture or a substance containing a detectable amount of methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B) and 846, and, between on or about March 31, 2016 and continuing through on or about April 19, 2016, in the Southern District of Florida and elsewhere, did knowingly and intentionally distribute of fifty (50) grams or more of a mixture or a substance containing a detectable amount of methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B) and Title 18, United States Code, Section 2.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

CRYSTAL CONNORS
SPECIAL AGENT
DRUG ENFORCEMENT ADMINISTRATION

Sworn to and subscribed before me this 16 day of May, 2016.

LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE